UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

United States of America          :
                                  :
v.                                :          Case No. 3:05cr268
                                  :
John M. Lucarelli                 :

RULING ON MOTION FOR JUDGMENT OF ACQUITTAL OR NEW TRIAL
[DOC. # 163]

Familiarity with the factual and procedural background of this case and the Court's ruling on the pre-trial motions of defendant John M. Lucarelli and his co-defendant Chance Vought, including motions to dismiss, see Ruling on Defendants' Pending Motions [Doc. # 75], is presumed.

On July 28, 2006, the jury returned a verdict finding defendant Lucarelli guilty of one count of conspiracy in violation of 18 U.S.C. § 371 (Count 1) and one count of securities fraud in violation of 18 U.S.C. § 1348 (Count 12), and finding him not guilty on the remaining eight counts of mail and securities fraud, see Verdict Form [Doc. # 128], all in connection with a scheme to illegally obtain shares of New Alliance Bancshares, Inc. ("NAB") through the conversion of the New Haven Savings Bank ("NHSB") from a Connecticut-chartered mutual savings bank to a Connecticut-chartered capital stock savings bank wholly-owned by NAB.[1]  The jury was also presented

---

[1] Co-defendant Chance Vought, and Robert Ross and George Kundrat, pled guilty to various crimes related to this scheme.

with a Special Interrogatory, asking:

> If you find the defendant guilty on any of Counts 2-4
> or 7-12, did you find the defendant participated in the
> fraudulent scheme with the specific intent to defraud:
> (a)   The Bank of property: YES_____  NO _____
> (b)   Depositors of money or property: YES_____   NO _____

The jury answered "No" to both (a) and (b) of the Special

Interrogatory.  Id. at 2.[2]

Before the Court accepted the jury's verdict, colloquy with

counsel was held at sidebar to determine how to proceed in light

of the jury's special interrogatory answers.  Defense counsel

advanced the position that "Lucarelli could not have been found

guilty here unless he had a specific – Lucarelli had a specific

intent either to aid or abet Ross in defrauding one or both [the

Bank or its depositors].  Lucarelli could not have been found

guilty unless he had a specific intent to defraud one or both,

whether he aided and abetted or not."  7/28/06 Tr. [Doc. # 154]

at 1718.  The Court observed that it "did not charge [the jury]

with respect to specific intent on aiding and abetting.  We

charged them only that the aider and abettor must know the crime

is being committed and acted in a way which is intended to bring

about the success of the criminal venture."  Id.  Defense counsel

---

[2] As this was the first prosecution of alleged fraud in the
context of a mutual bank conversion such as this, the Court and
the parties crafted this special interrogatory as a way of teeing
up for the Second Circuit's consideration the issue, previewed in
defendants' motions to dismiss, of what constitutes fraud and who
must be proved to have been defrauded in such a case, as well as
for potential determination of applicable sentencing guidelines.

pressed that "Lucarelli to be convicted of aiding and abetting had to aid and abet the principal in seeking to defraud either the bank and/or the 2,100 depositors, and if the jury is saying that they are not finding Lucarelli had that specific intent to do either, it cannot convict him of those charges." Id. at 1719. With respect to the conspiracy count, defense counsel also advanced the position that he did not believe Lucarelli could be found guilty unless the jury found he had a specific intent to defraud either the bank or the depositors. Id. at 1720. The Court queried whether it should leave the issue for post-trial briefing or ask for clarification from the jury; defense counsel asked for a judgment of acquittal and stated that "we should take [the verdict] as it is," and the Court ultimately agreed.[3] Id. at 1721-23.

---

[3] The Government's suggestion that defendant has waived any request for a new trial based on defense counsel's preference to take the verdict "as it is" is not persuasive as defense counsel raised his claim of an internally inconsistent verdict and articulated his justification for requesting a judgment of acquittal before the verdict was accepted, agreeing to reserve the issue for post-trial briefing. Cf. generally Fed. R. Civ. P. 51(b) ("A party may preserve a claim of error by informing the court – when the court ruling or order is made or sought – of the action the party wishes the court to take, or the party's objection to the court's action and the grounds for that objection."); Kosmynka v. Polaris Indus., Inc., 462 F.3d 74, 82-83 (2d Cir. 2006) (defendant's objection to inconsistency in negligence verdict was preserved for appeal when court entered verdict over defense counsel's request for a mistrial); United States v. Rivera, 192 F.3d 81, 84 (2d Cir. 1999) (defendant-appellant preserved objection by "fairly alert[ing] the district court and the government to the nature of his claim").

Defendant now moves for a judgment of acquittal or for a new
trial, contending, inter alia, that "[t]he jury's finding in
response to the special interrogatory that Mr. Lucarelli did not
act with specific intent to defraud either the Bank or the
depositors, an essential element of both crimes, requires an
acquittal on both counts," or, alternatively, that "the
contradiction between the jury's answers to the special
interrogatory and its general verdict warrants a new trial."  See
Def. Mot. [Doc. # 163]; Def. Mem. [Doc. # 164].  The Government
opposes, contending that the Court's jury instructions were
proper and that the jury's special interrogatory answers do not
warrant entry of a judgment of acquittal or a new trial.  See
Gov. Opp. [Doc. # 177].  For the reasons that follow, Lucarelli's
motion will be granted and a judgment of acquittal will enter on
Count 1 and Count 12.

I.    Summary

As noted above, Count 1 of the Indictment charged Lucarelli
with conspiracy to commit mail and securities fraud in violation
of 18 U.S.C. § 371, while Count 12 charged him with securities
fraud in violation of 18 U.S.C. § 1348 in relation to the stock
order form submitted by NHSB depositor Linda Morant on March 7,
2004 requesting 70,000 shares of NAB stock.

Following the close of evidence, the Court instructed the
jury about criminal liability on the conspiracy count, as well as

on the securities and mail fraud counts as both a principal and an aider and abettor.  Neither the Court's charge on conspiracy nor on aiding and abetting specifically instructed the jury that it must find proved that Lucarelli acted with a specific intent to defraud the NHSB and/or its depositors in order to find him guilty.  However, as the parties now agree (with some equivocation on the Government's part with respect to aiding and abetting), and as detailed more thoroughly below, in order to find Lucarelli guilty of conspiracy to commit mail/securities fraud and/or of aiding and abetting securities fraud, the jury was required to find that Lucarelli had the specific intent to defraud the NHSB and/or its depositors.  And, given the jury's finding on the special interrogatories that Lucarelli did not have a specific intent to defraud either the NHSB or its depositors, it can be ascertained that the jury misunderstood, or was not adequately guided by, the instructions on the intent element of Counts 1 and 12.

Although the jury was generally instructed regarding the Government's theory in the Indictment of a "scheme or artifice to defraud by means of false or fraudulent pretenses, representations, or promises (a) the New Haven Savings Bank of its right to control its property, that is, its ability to sell stock shares in the manner that it chose and in compliance with state and federal banking laws, and/or (b) depositors who sought

to obtain stock shares but were unable to do so because of the alleged scheme," see Jury Instr. [Doc. # 112] at 39, this instruction was apparently insufficient to carry over to the specific intent element instructions for each crime charged. Thus, considering the Government's burden to prove each legal element of Counts 1 and 12, the jury's special interrogatory answers are tantamount to an acquittal on both counts.

## II.   Standards

Fed. R. Crim. P. 29 requires a judgment of acquittal on any charge for which there is insufficient evidence to sustain a conviction.  "A district court can enter a judgment of acquittal where the evidence is insufficient 'only if, after viewing the evidence in the light most favorable to the prosecution and drawing all reasonable inferences in the government's favor, it concludes no rational trier of fact could have found the defendant guilty beyond a reasonable doubt.'"  United States v. Hernandez, 02cr341 (EBB), 2006 WL 861002, at *4 (D. Conn. Mar. 31, 2006) (citing United States v. Reyes, 302 F.3d 48, 52 (2d Cir. 2002)).  When considering a Rule 29 motion, "the court must be careful to avoid usurping the role of the jury."  United States v. Guadagna, 183 F.3d 122, 129 (2d Cir. 1999).  "The court must give 'full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact' in determining whether a reasonable mind might fairly

conclude guilt beyond a reasonable doubt was established upon the evidence."  <u>Hernandez</u>, at *4 (citing <u>Guadagna</u>, 183 F.3d at 129). Thus, "Rule 29(c) does not provide the trial court with an opportunity to substitute its own determination of . . . the weight of the evidence and the reasonable inferences to be drawn for that of the jury."  <u>Guadagna</u>, 183 F.3d at 129.

Rule 33 of the Federal Rules of Criminal Procedure, which permits the Court, upon defendant's motion, to "vacate any judgment and grant a new trial if the interest of justice so requires," allows "broad discretion . . . to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice."  <u>United States v. Ferguson</u>, 246 F.3d 129, 133 (2d Cir. 2001) (internal quotation omitted).  "In exercising the discretion so conferred, the court is entitled to weigh the evidence and in so doing evaluate for itself the credibility of witnesses."  <u>United States v. Sanchez</u>, 969 F.2d 1409, 1413 (2d Cir. 1992) (internal quotation omitted). Nonetheless, in evaluating the witnesses' testimony:

> [T]he judge must examine the totality of the case.  All the facts and circumstances must be taken into account. An objective evaluation is required.  <u>There must be a real concern that an innocent person may have been convicted</u>.  It is only when it appears that an injustice has been done that there is a need for a new trial "in the interest of justice."

<u>Id</u>. at 1414 (emphasis added).

## III.  Discussion

### A.    Securities Fraud Conviction (Count 12)

As noted above, the Court's charge to the jury on aiding and abetting did not explicitly instruct that in order to be guilty of aiding and abetting securities or mail fraud, Mr. Lucarelli must have had a specific intent to defraud the NHSB and/or its depositors.  Rather, the jury was instructed, inter alia, that "[a]n aider and abettor must know that the crime is being committed and act in a way which is intended to bring about the success of the criminal venture," that he must "participate in the crime charged as something he wished to bring about," that he must "knowingly associate himself with the criminal venture," and that he must "seek by his actions to make the criminal venture succeed."  Jury Instr. at 53-54.  However, both sides now appear to be in at least marginal agreement that a finding of specific intent to defraud the NHSB and/or the depositors was required for a fraud conviction, even on an aiding and abetting theory: defense counsel made this contention after the charge was given and the case submitted to the jury, in summarizing his objections to the Court's charge; the Government at oral argument on defendant's post-trial motions agreed that the required intent of a principal and an aider and abettor is "essentially," if not "precisely," the same, and admitted that any distinction between the two may be one "without a difference."  And, with the 20/20

vision of hindsight, the Court agrees that the defendant's
position with respect to the aiding and abetting charge is
correct and that the jury's special interrogatory answers
illustrate that the charge was insufficiently tailored to the
novel circumstances of this prosecution.

     The comment to the proposed model jury charge for aiding and
abetting in Sand, <u>Modern Federal Jury Instructions Criminal</u>
(2006) ("Sand"), states that "[i]n order to associate oneself
with the underlying crime, the defendant must have shared the
principal's criminal intent."  Sand, Instruction 11-2, cmt. at
11-11 (citing, <u>inter</u> <u>alia</u>, <u>United States v. Evans-Garcia</u>, 322
F.3d 110, 114-15 (1st Cir. 2003); <u>United States v. Sayetsitty</u>,
107 F.3d 1405, 1412 (9th Cir. 1997) (elements of conviction under
an aiding and abetting theory include "that the accused had the
specific intent to facilitate the commission of a crime by
another" and "that the accused had the requisite intent of the
underlying substantive offense")).  This position is also
supported by Second Circuit authority.  For example, in <u>United</u>
<u>States v. Wiley</u>, 846 F.2d 150, 154 (2d Cir. 1988), the court
considered the sufficiency of the evidence to sustain an aiding
and abetting wire fraud conviction in connection with an alleged
scheme "to attract distributors to sell home energy conservation
devices and home security devices" and stated "the government in
the instant case had the burden of proving that [defendant]

joined the SCS scheme, <u>acted with the specific intent to defraud</u> <u>potential SCS distributors through the use of the wires</u>, and that he contributed to the scheme's success" (emphasis added). Similarly, in <u>United States v. Frampton</u>, 382 F.3d 213, 222-23 (2d Cir. 2004), the court considered a defendant's conviction of aiding and abetting the commission of a violent crime in aid of racketeering in violation of 18 U.S.C. § 1959 and stated that "the defendant must act with the specific intent of facilitating or advancing the principal's commission of the underlying crime," and that with respect to the particular crime charged therefore "the burden was on the Government to prove that at the time [the defendant] assaulted [the victim], he knew that [the principal] was seeking to increase his position in the [criminal enterprise] and acted toward that end."

These cases show that the nuanced distinction the Government attempted to draw at oral argument by referring to the more general language of cases such as <u>United States v. Reifler</u>, 446 F.3d 65, 96 (2d Cir. 2006), <u>United States v. Samaria</u>, 239 F.3d 228, 235 (2d Cir. 2001), and <u>United States v. DeFiore</u>, 720 F.2d 757, 763-64 (2d Cir. 1983), for the proposition that an aider and abettor must only act "with the specific purpose of bringing about the underlying crime," <u>Samaria</u>, 239 F.3d at 235, particularly in the context of a specific intent crime such as fraud (conviction of which as a principal requires specific

intent to defraud another of money and/or property), is one

without a difference.  While the language of the cases cited by

the Government parallels the essence of the Court's charge, it

does not alter the intent proof required and it fails to

articulate the required shared intent between aider and abettor

and principal.[4]  Accordingly, the language of the Court's charge,

while technically correct, did not suffice for purposes of

adequately guiding the jury in a case such as this one.[5]

     Thus it appears that the Court's and the parties' original

---

[4] The Court does not find persuasive the Government's other
attempts to explain the jury's special interrogatory answers.  As
to the Government's argument that "in returning a general verdict
of guilty on Count 12, the jury necessarily found that Lucarelli
did have specific intent to defraud or else they could not have
returned a verdict of guilty for Count 12," Gov't Opp. at 16,
this contention cannot be accurate because, as just described,
the Court's instruction on aiding and abetting liability did not
explicitly state that a finding of specific intent to defraud the
NHSB and/or its depositors was required for conviction.  The
Government's reference to United States v. Edelkind, 467 F.3d
791, 795 (1st Cir. 2006), is thus inapposite because in that case
the jury was instructed as to all essential elements of bank
fraud, notwithstanding that the special interrogatory omitted
reference to one of those elements.  The Government's argument
that the jury may have applied a different definition of
"property" in answering the special interrogatories than in
applying the Court's instructions to the substantive counts,
Gov't Opp at 15-16, is speculative and contrary to the assumption
that juries follow the instructions given to them, see Richardson
v. March, 481 U.S. 200, 211 (1987).

[5] This case is an example of how generalized language from
case law and standardized model charges, absent adequate
tailoring, may be insufficient in novel or otherwise unusual
cases, notwithstanding that neither of the parties requests a
more specialized charge, as was the case here (indeed, Lucarelli
did not submit any proposed charge on aiding and abetting).

intent in positing the special interrogatory to the jury to
facilitate the Second Circuit's review of what conduct can
constitute fraud in the context of a mutual bank conversion case
such as this one has ended up having a life beyond this purpose
inasmuch as it became the vehicle to reflect the jury's finding
that the Government's proof on the element of intent fell short.
Given this finding, the appropriate remedy is to set aside the
jury's general verdict on Count 12 and enter a judgment of
acquittal, rather than to order a new trial, because through the
special interrogatory answers the jury memorialized its finding
with respect to the element of specific intent to defraud, albeit
in a context separate from its consideration of the other
elements of securities fraud.

        B.    Conspiracy Conviction (Count 1)

        As with the aiding and abetting charge, the Court's
conspiracy charge did not explicitly instruct the jury that it
must find that the Government proved that Lucarelli had a
specific intent to defraud the NHSB and/or its depositors.
Rather, the charge stated, inter alia, that the Government must
prove that Lucarelli "knowingly and willfully became a member of
the conspiracy" and participated in it "with knowledge of its
unlawful purpose and with the specific intention of furthering
its business or objective as an associate or worker," defining
"willfully" as "to act intentionally, with knowledge that one's

conduct is unlawful and with the intent to do something the law

forbids, that is to say, to do something with a bad purpose

either to disobey or disregard the law," specifically noting that

"[t]o act willfully requires a general awareness of illegality,

but does not require a defendant to know the specific legal rules

or requirements."  Jury Instr. at 63-64.

However, after review of the parties' briefing and oral

argument on the necessity of a "specific intent to defraud"

finding for a conspiracy conviction, the Court is convinced that

such a finding is an essential element of a charge of conspiracy

to commit securities and/or mail fraud and, given the special

interrogatory answers, it is clear that the jury did not find

such an intent proved here.[6]  While the Sand Instructions 19-3

and 19-6 cited by defendant do not support this conclusion, as

they track the charge given by the Court, other authority

specifically relating to conspiracy to commit specific-intent

crimes such as fraud does support the conclusion that a finding

of specific intent to defraud is a necessary element of a

---

[6] The Government's argument that "[t]he jury returned a
verdict of guilty as to Count One and accordingly they
necessarily found each of the elements of Count One to be
present," Gov't Opp. at 24, is unpersuasive because, as just
described, the jury was not explicitly instructed that specific
intent to defraud the Bank and/or its depositors was an essential
element of the conspiracy charge.

13

conviction of conspiracy to commit securities or mail fraud.[7]

Second Circuit case law teaches that for a defendant to be

convicted of conspiring to commit a specific intent crime, the

Government must prove "that the defendant had specific intent to

violate the substantive statute," United States v. Ceballos, 340

F.3d 115, 124 (2d Cir. 2003); Samaria, 239 F.3d at 234, and "that

the intended future conduct [the conspirators] agreed upon

includes all elements of the substantive crime," United States v.

Pinckney, 85 F.3d 4, 8 (2d Cir. 1996), which in this case would

thus include the specific intend to defraud.  See also United

States v. Forcada, No. 05-14448, 2006 WL 3406541, at *2 (11th

Cir. Nov. 27, 2006) (slip op.) (rejecting defendant's argument of

insufficient evidence for conviction of conspiring to commit

health care fraud where there was circumstantial evidence

sufficient to permit a jury to infer "that the defendant acted

with the specific intent to defraud"); United States v. Peterson,

244 F.3d 385, 389 (5th Cir. 2001) (holding that for conspiracy

charge, the Government was required to "prove the same degree of

criminal intent as is necessary for proof of the underlying

substantive offense" and noting defendants' arguments that "there

---

[7] The Government did not dispute this general legal
proposition in its briefing or at oral argument, but rather
appears to argue that the charge given somehow communicated this
requirement to the jury, which it demonstrably did not do as the
jury convicted defendant of conspiracy notwithstanding its
finding of no specific intent to defraud either the NHSB or its
depositors.

14

was insufficient evidence of the required intent to defraud");

United States v. Rahseparian, 231 F.3d 1257, 1262 (10th Cir.

2000) (noting "[defendant] argues the evidence is insufficient to

show he knew [defendants' company] was defrauding its customers,

an essential element of both the mail fraud and conspiracy

alleged in this case") (emphasis added).

Accordingly, while it is unfortunate that this issue was not

explicitly recognized and decided before the jury was charged,

the special interrogatory answers make clear that the jury found

no specific intent to defraud either the NHSB or its depositors

and, applying the correct legal formulation of the elements of

conspiracy to commit securities/mail fraud – including specific

intent to defraud – it would be a miscarriage of justice to

convict Lucarelli on Count 1 and thus a judgment of acquittal on

this count will enter.

## IV.   Conclusion

For the foregoing reasons, defendant's Motion for Judgment

of Acquittal or New Trial [Doc. # 163] is GRANTED and a judgment

of acquittal shall enter on Count 1 and Count 12.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton
United States District Judge

**Dated at New Haven, Connecticut this 8th day of March, 2007.**